Filing # 146000093 E-Filed 03/18/2022 02:09:11 PM

**IN THE COUNTY COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**IN AND FOR SARASOTA COUNTY, FLORIDA**
**SMALL CLAIMS DIVISION**

Kedessa Roper,

*Plaintiff,*

v.                                                     Case No:

**Total Card, Inc.,**
**Vervent, Inc.,**
*As Successor-In-Interest to*                          **JURY TRIAL DEMANDED**
**Total Card, Inc.,** and
**Jefferson Capital Systems, LLC,**

*Defendants.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Kedessa Roper** ("**Ms. Roper**"), by and through her

attorneys, Seraph Legal, P.A., and complains of the Defendants, **Total Card, Inc.** ("**Total**"),

**Vervent, Inc.** ("**Vervent**"), as *successor-in-interest* to **Total**, and **Jefferson Capital Systems,**

**LLC** ("**Jefferson**"), (collectively, the "**Defendants**") stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. Roper for damages not exceeding $8,000,

exclusive of fees and costs brought against the Defendants for violations of the Florida *Civil*

*Remedies for Criminal Practices Act*, Florida Statutes § 772.101, *et. seq.* ("**CRCPA**"), the

Defendants for violations of the *Florida Consumer Collection Practices Act*, Florida Statutes §

559.55, *et. seq.* ("**FCCPA**"), Jefferson Capital only for violations of the *Fair Debt Collection*

*Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and Total only for unjust enrichment.

## JURISDICTION AND VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the CRCPA, Florida Statutes § 772.104, the FCCPA, Section 559.77 (1), Florida Statutes, and Section 34.01, Florida Statutes.

3.      The Defendants are subject to the provisions of the CRCPA, and the FCCPA, and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Jefferson only for the FDCPA.

4.      Venue is proper in Sarasota County, Florida, because the acts complained of were committed and / or caused by the Defendants within Sarasota County.

## PARTIES

5.      **Ms. Roper** is a natural person who at all times relevant has resided in the City of Bradenton, Sarasota County, Florida.

6.      Ms. Roper is a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, Florida Statutes § 559.55(8).

7.      **Total** is a South Dakota corporation, with a principal business address of **2700 S. Lorraine Place, Sioux Falls, SD 57106**.

8.      Total's registered agent is **Incorp Services, Inc., 400 N Main Ave., Suite 206, Sioux Falls, SD 57104.**

9.      **Vervent** is a Delaware corporation, with a principal business address of **10182 Telesis Ct., Suite 300, San Diego, CA 92121**.

10.     Vervent is registered to conduct business in the State of Florida, where its registered agent is, **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.**

11.     In December 2020, Total was acquired by Vervent.

12.     **Jefferson** is a Georgia limited liability company, with a principal business address of **16 McLeland Rd., St. Cloud, MN 56303.**

13.     Jefferson is registered to conduct business in the State of Florida, where its registered agent is, **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

### Jefferson is a Debt Collector

14.     Jefferson is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Florida Statutes § 559.55(7), in that it uses an instrumentality of commerce, including the postal mail and / or telephone, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15.     Additionally, Jefferson is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* **("CCA")**, holding license number **CCA9901497.**

### FACTUAL ALLEGATIONS

### Total Makes Illegal Loans to Ms. Roper

16.     In or around May 2017, Ms. Roper obtained an open-ended line of credit (the "**Total Account**" or "**Total Loan**") from Total, an online lender.

17.     The Total Loan had a stated credit limit of $300; however, the Total Loan also had a $75 "annual fee" which Ms. Roper was required to pay, meaning that only $225 of credit was available to her.

18.     The Total Loan also had a $95 "program" fee, along with a "monthly servicing" fee of $8.25 per month, which Ms. Roper was required to pay as well.

19. The Total Loan was, purportedly, funded through The Bank of Missouri ("**TBOM**").

20. Ms. Roper used the line of credit for household purposes.

21. Ms. Roper thereafter allegedly became indebted to Total in the amount of $533 for credit card charges made for various consumer goods and services.

22. The Total Loan arose from services which were primarily for family, personal, or household purposes, specifically charges for consumer goods and services, and therefore the Debt meets the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Florida Statutes § 559.55(6).

23. Florida Statutes § 687.071(2) renders loans made with annual interest rates greater than 25% a second-degree misdemeanor.

24. Florida Statutes § 687.071(7) renders any loan in violation of Florida Statutes § 687.701, and any debt stemming from such extension of credit, void and unenforceable.

25. The *stated* annual interest rate on the Total Loan exceeded 34.9% annually.

26. In reality, the annual interest rate was much higher—in the triple digits.

27. The $170 or more, in fees Ms. Roper was required to pay to obtain the $300 line of credit are considered interest under Florida law. *See* Fla. Stat. 687.03 -- interest is computed including fees for "any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received."

28. The principal sum received was a maximum of $300, for which Ms. Roper had to pay $470, which is an 89.5% annual interest rate.

29. When adding the *additional* 34.99% annual rate assessed by Total, the combined effective APR is **124.49%.**

30.   The Total Loan is thus void *ab initio*.

31.   Any person who willfully makes such a loan, in addition to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935). *See also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966); *Rollins v. Odom*, 519 So. 2d 652, 655 (Fla. Dist. Ct. App. 1988).

32.   The Total Loan is therefore an "unlawful debt" per Florida Statutes §772.102(2).

33.   Florida law prohibits any recovery of the principal on such loans. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

34.   <u>Any</u> amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

35.   Ms. Roper had made at least $500 in payments on the Total Account, including interest and fees.

**Total Engages in Rent-a-Bank Scheme with TBOM**

36.   The Total® Visa Card is a registered trademark of Total Card, Inc. *See* https://www.totalcardvisa.com/?page=contact.

37.   In December 2020, Total was sold to the California-based FinTech company Vervent; the card was renamed the Vervent Card.

38.   Prior to this time, Total performed all substantial business functions involving Total Visa from its offices in Sioux City, South Dakota and in other locations.

39.     After the December 2020 sale, Vervent performed all substantial business functions in the same fashion.

40.     Total, now Vervent, provides consumer financing options to deep sub-prime consumers, at interest rates illegal in the vast majority of states, including Florida.

41.     Total Visa Cards and Vervent Cards (the **"Cards"**) were/are ostensibly issued by TBOM, a small bank in Missouri whose consumer loan portfolio consists exclusively of credit products made via non-bank "partners."

42.     The Cards carry interest rates of 34.99% annually and generally offer a $300 line of credit. **SEE PLAINTIFF'S EXHIBIT A.**

43.     Total and Vervent, as non-bank entities, are subject to Florida's restrictions on interest rates; the highest lawful rate the Defendants could charge in Florida would be 18% annually.

44.     In an effort to avoid state usury laws, such as Florida's, Total and Vervent claim they have "partnered" with various small banks, as banks are not subject to state interest rate limits pursuant to the National Bank Act.

45.     Such arrangements are referred to as "rent-a-bank" schemes.

46.     In determining whether an agreement is usurious, the court may disregard the form of the agreement and consider the substance of the transaction. *Antonelli v. Neumann*, 537 So. 2d 1027, 1029 (Fla. Dist. Ct. App. 1988). See also, *Growth Leasing, Ltd. v. Gulfview Advertiser, Inc.*, 448 So.2d 1224 (Fla. 2d DCA 1984); *May v. U.S. Leasing Corp.,* 239 So.2d 73 (Fla. 4th DCA 1970); *Kay v. Amendola*, 129 So.2d 170 (Fla. 2d DCA 1961).

47.     On paper, Total and Vervent's loans and cardholder agreements claim their loans are made by TBOM and are serviced by Total or Vervent.

48.     However, as aforementioned, TBOM has virtually nothing to do with loans it makes utilizing Total and Vervent's trademarked names, other than to lend its name and status as a state-chartered bank to Total and Vervent, non-bank entities.

49.     While TBOM makes secured loans or extensions of credit directly to consumers itself, TBOM offers no credit card products or other unsecured consumer loans directly.

50.     Indeed, the vast majority of TBOM's consumer lending is through "partnership" agreements with non-bank lenders, similar to its agreement with Total and Vervent.

51.     TBOM, as a bank, can export the maximum interest rate in its home state of Missouri to lend to borrowers in other states with stricter usury laws. *See 12 U.S.C. § 85.*

52.     However, TBOM was not the true lender of Ms. Roper's Total Loan.

53.     Total and Vervent, as applicable, were the true lenders concerning Ms. Roper's Total Account, as they have, or had, the predominant economic interest in loans made to consumers like Ms. Roper. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong,* 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

54.     TBOM stood to lose virtually nothing if a loan or extension of credit goes bad.

55.     An examination of corporate records from the South Dakota Secretary of State shows Total owned several related companies, named Total Card Funding I LLC, Total Card Funding II LLC, and Total Card Funding III, LLC.

56.     Upon information and belief, these entities, as their names clearly imply, provided capital utilized to make loans funded through Total Visa, and received payments, including usurious interest, therefrom.

57.     TBOM stood to profit very little in the event a loan or extension of credit is paid in full at illegal annual interest rates, like the Total Loan granted to Ms. Roper.

58.     TBOM collected a small, but guaranteed, fee for each loan or extension of credit originated as part of the rent-a-bank scheme with Total and Vervent, along with the payment of certain other fees which constitute the "rent."

59.     Total and Vervent's partnerships with TBOM required them to purchase loans or extensions of credit like the ones made to Ms. Roper almost immediately after origination – usually the same day.

60.     Through a highly complex series of transactions involving multiple entities, including Total Card Funding I, LLC and Total Card Funding II, LLC, ownership of the credit card receivables is (or was, as applicable), assigned by TBOM to Total and Vervent, who then collect(ed) the loans – and the 34.9% interest assessed on them, in addition to other fees.

61.     Total and Vervent also are required to ensure TBOM "can't lose" money on Total Card customers, and maintains a cash collateral account with TBOM, an alternative collateral account, and letters of credit which benefit TBOM.

62. Consumers who are looking to obtain financing a Total Vida Card had to apply at www.totalcardvisa.com, a website owned and maintained by Total, and not through TBOM's own website.

63. Potential borrowers are screened based upon lending criteria developed and implemented by Total, not by TBOM.

64. Total, through one of its subsidiaries, also acted as the servicer for Total loans and extensions of credit.

65. Total reconciled the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

66. Monthly periodic statements were produced by Total and mailed or emailed to consumers with its South Dakota address as the correspondence address.

67. In a similar fashion, Total produced and mailed monthly periodic statements to Ms. Roper concerning her Total Visa Card.

68. Total reported Ms. Roper's account to several major *Consumer Credit Reporting Agencies* ("CRAs"), including Experian. **SEE PLAINTIFF'S EXHIBIT B**.

69. The account name reported to Experian was, "BK OF MISSOURI/TOTAL CARD"; however, the address provided is the principal address for Total. *Id.*

70. Total, not TBOM, sold portfolios of charged-off consumer debt to third-party debt purchasers, and retained the funds for these purchases itself, and receives payment for the sale of those charged-off receivables.

### Jefferson Collects Illegal Debt from Ms. Roper

71. Around July 2019, Total or a successor-in-interest, sold or otherwise assigned the Total Loan to Jefferson.

72.     Jefferson knew, or should have known, that it was collecting an unlawful debt from Ms. Roper.

73.     Jefferson collects a large number of unlawful debts that derive from creditors such as Total, which it purchases at a tiny fraction of face value, and then attempts to collect the full value of such debts from consumers like Ms. Roper.

74.     Beyond this, Jefferson was in possession of the original account documents creating the Total Loan.

75.     The 39.99% interest rate was printed in large, bold type on the account disclosure, as was the $75 annual fee required to obtain the $300 line of credit (effectively, a $225 line of credit).

76.     Jefferson then took steps to collect the Total Loan from Ms. Roper, including reporting the Total Loan as a legally owed, legitimate debt to CRAs like Experian. **SEE PLAINTIFF'S EXHIBIT C.**

77.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

78.     Jefferson's report regarding the Total Loan to Experian unfairly impacted Ms. Roper's credit scores, credit report, debt-to-income ratios, and similar.

79.     Ms. Roper has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## DEFENDENTS' VIOLATIONS OF THE CRCPA
### Florida Statutes § 772.103(1)

80.   Ms. Roper hereby incorporates paragraphs 1 – 78 as if fully stated herein.

81.   Total violated **Florida Statutes § 772.103(1),** when, with criminal intent, it received proceeds directly from the collection of an unlawful debt –   Ms. Roper's Total Loan – and utilized such proceeds to maintain its ongoing lending enterprise with TBOM, and multiple other persons, natural and otherwise.

82.   Jefferson violated **Florida Statutes § 772.103(1)** when it, with criminal intent, engaged in a pattern of criminal activity through the collection of an unlawful debt, the proceeds of which were invested into its enterprise to fund, amongst other things, the purchase of more unlawful debt.

83.   The Defendants took numerous actions in furtherance of this conspiracy, including the collection of Ms. Roper's loans and reporting it to the CRAs, sending collection letters, and making payment demands over the phone.

84.   Total's intent is exhibited by its elaborate attempt to obfuscate the true lender of Ms. Roper's Total Loan and to avoid state usury laws through the use of a "rent-a-bank" scheme.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.   Threefold the amount of actual damages of at least **$1,000,** or, in the alternate, the statutory minimum of **$200,** whichever is greater, pursuant to Florida Statutes 772.104(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statutes 772.104(1);

c.   An injunction of Estoppel against the Defendants from engaging in any further action in violation of Florida law, pursuant to Florida Statutes 772.14; and,

. d.      Any other relief this Court deems equitable and proper under the circumstances.

### COUNT II
### TOTAL'S VIOLATIONS OF THE CRCPA
### Florida Statutes § 772.103(2)

85.    Ms. Roper hereby incorporates paragraphs 1 – 78 as if fully stated herein.

86.    Total, violated **Florida Statutes § 772.103(2)**, when, with criminal intent, it received proceeds directly from the collection of an unlawful debt –  Ms. Roper's Total Loan – and utilized such proceeds to maintain its ongoing lending enterprise with TBOM, and multiple other persons, natural and otherwise.

87.    Total took numerous actions in furtherance of this conspiracy, including the collection of Ms. Roper's Total Loan and reporting it to the CRAs.

88.    Total's intent is exhibited by its elaborate attempt to obfuscate the true lender of Ms. Roper's Total Loan, and to avoid state usury laws through the use of a "rent-a-bank" scheme.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment against Total, jointly and severally, ordering:

a.    Threefold the amount of actual damages of at least $1,000 (for a total of $3,000), or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statutes 772.104(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statutes 772.104(1);

c.    An injunction of Estoppel against MGD from engaging in any further action in violation of Florida law, pursuant to Florida Statutes 772.14; and,

d.    Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## TOTAL'S VIOLATIONS OF THE CRCPA
### Florida Statutes § 772.103(3)

89.     Ms. Roper hereby incorporates paragraphs 1 – 78 as if fully stated herein.

90.     Total violated **Florida Statutes § 772.103(3),** when it participated directly in an enterprise with multiple persons, natural and otherwise, including TBOM, Total Card Funding I LLC, Total Card Funding II LLC, and Total Card Funding III LLC, via the collection of an unlawful debt – Ms. Roper's Total Loan.

91.     Total took numerous actions in furtherance of this conspiracy, including the collection of Ms. Roper's loans and reporting it to the CRAs.

92.     Total's intent is exhibited by its elaborate attempt to obfuscate the true lender of Ms. Roper's Total Loan, and to avoid state usury laws through the use of a "rent-a-bank" scheme.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment against Total, jointly and severally, ordering:

a.  Threefold the amount of actual damages of at least $1,000 (for a total of $3,000), or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statutes 772.104(1);

b.  Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statutes 772.104(1);

c.  An injunction of Estoppel against MGD from engaging in any further action in violation of Florida law, pursuant to Florida Statutes 772.14; and,

d.  Any other relief this Court deems equitable and proper under the circumstances.

## COUNT IV
## DEFENDANTS' VIOLATIONS OF THE CRCPA
### Florida Statutes § 772.103(4)

93.     Ms. Roper hereby incorporates paragraphs 1 – 78 as if fully stated herein.

94.     Total violated **Florida Statutes § 772.103(4)**, when it conspired with multiple persons, natural and otherwise, including TBOM, Total Card Funding I LLC, Total Card Funding II LLC, and Total Card Funding III LLC, to collect Ms. Roper's Total Loan, and to use any funds collected in furtherance of its ongoing enterprises.

95.     Jefferson violated **Florida Statutes § 772.103(4)** when it conspired with Total, and other persons, natural and otherwise, to collect an unlawful debt – Ms. Roper's Total Loan.

96.     The Defendants took numerous actions in furtherance of this conspiracy, including the collection of Ms. Roper's Total Loan and reporting it to the CRAs, sending collection letters, and making payment demands over the phone.

97.     Total's intent is exhibited by its elaborate attempt to obfuscate the true lender of Ms. Roper's Total Loan and to avoid state usury laws through the use of a "rent-a-bank" scheme.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.   Threefold the amount of actual damages of at least **$1,000**, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statutes 772.104(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statutes 772.104(1);

c.   An injunction of Estoppel against the Defendants from engaging in any further action in violation of Florida law, pursuant to Florida Statutes 772.14; and,

d.   Any other relief this Court deems equitable and proper under the circumstances.

## COUNT V
## DEFENDANTS' VIOLATIONS OF THE FCCPA
### Florida Statutes § 559.72(9)

98.     Ms. Roper hereby incorporates paragraphs 1 – 78 as if fully stated herein.

99.     Total violated **Florida Statutes § 559.72(9),** when it attempted to – and did – collect portions of the Total Loan from Ms. Roper, when the Total Loan was illegitimate and unenforceable due to the application of interest rates of nearly 35% percent annually on the principal amount of the loan, with an effective interest rate exceeding 100%, in violation of Florida Statutes § 687.071, and Total knew, or should have known, the Total Loan was unenforceable in Florida.

100.    Total violated **Florida Statutes § 559.72(9),** when it asserted rights which do not exist, specifically, the right to collect the Total Loan from Ms. Roper, when the Total Loan was not legally owed pursuant to Florida law.

101.    Jefferson violated **Florida Statutes § 559.72(9),** when it attempted to collect the Total Loan from Ms. Roper, the Total Loan was an illegal and unenforceable debt due to its unlawful interest rate, in violation of Florida Statute § 687.071, and Jefferson knew, or should have known, the Total Loan was unenforceable in Florida.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment against the Defendants, jointly, and severally for:

a.      Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.      Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

d.      Such other relief that this Court deems just and proper.

**COUNT VI**
**JEFFERSON'S VIOLATIONS OF THE FDCPA**
**15 U.S.C. § 1692e**

102.   Ms. Roper adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

103.   Jefferson violated **15 U.S.C. § 1692e** when it used misleading and deceptive means to attempt to collect a debt from Ms. Roper, by reporting the Total Loan to a CRA as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 39.9% annually, with an effective interest rate of over 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment in her favor against Jefferson, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VII**
**JEFFERSON'S VIOLATIONS OF THE FDCPA**
**15 U.S.C. §§ 1692e(10)**

104.   Ms. Roper adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

105.   Jefferson violated **15 U.S.C. § 1692e(10)** when it used misleading and deceptive means to attempt to collect a debt from Ms. Roper, by reporting the Total Loan to a CRA as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 39.9% annually, with an effective interest rate of over 100% annually, was a

legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment in her favor against Jefferson, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VIII**
**JEFFERSON'S VIOLATIONS OF THE FDCPA**
**15 U.S.C. § 1692e(2)(a)**

106.   Ms. Roper adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

107.   Jefferson violated **15 U.S.C. § 1692e(2)(a)** when it made a false representation about the character, amount and/or legal status of a debt by reporting the Total Loan to a CRA as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 39.9% annually, with an effective interest rate of over 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment in her favor against Jefferson, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT IX
## JEFFERSON'S VIOLATIONS OF THE FDCPA
## 15 U.S.C. § 1692e(8)

108.   Ms. Roper adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

109.   Jefferson violated **15 U.S.C. § 1692e(8)** when it communicated credit information to a CRA which it knew or should have known to be false, by reporting the Total Loan to a CRA as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 39.9% annually, with an effective interest rate of over 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment in her favor against Jefferson, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT X
## JEFFERSON'S VIOLATIONS OF THE FDCPA
## 15 U.S.C. § 1692f(1)

110.   Ms. Roper adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

111.   Jefferson violated **15 U.S.C. § 1692f(1)** when it attempted to collect an amount not authorized by law, to wit, the entire alleged balance of the Total Loan, which was void *ab initio*.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment in her favor against Jefferson, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.  Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT XI
## UNJUST ENRICHMENT

112.  Ms. Roper adopts and incorporates paragraphs 1 –78 as if fully stated herein.

113.  Ms. Roper conferred a benefit to Total in the form of payments to Total.

114.  Total had no legal right to the collection of these payments and was therefore unjustly enriched.

115.  Any amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

116.  Total knew that it had no legal right to the collection of these payments, as evidenced by its business model, but choose to accept the funds from Ms. Johnson regardless.

**WHEREFORE,** Ms. Roper respectfully requests this Honorable Court enter judgment against Total, and for her, for:

a.  Actual damages for the payments conferred to Total pursuant to the void loans; and,

b.  Any other relief this Court deems equitable and proper under the circumstances

## DEMAND FOR JURY TRIAL

Ms. Roper hereby demands a trial by jury on all issues so triable.

Respectfully submitted on March 18, 2022, by:

**SERAPH LEGAL, P.A.**

*/s/ Thomas M. Bonan*
Thomas M. Bonan Esq.
Florida Bar No.: 118103
1614 North 19th Street
Tampa, Florida 33605
Tel: 813-567-1230 (Ext: 302)
Fax: 855-500-0705
TBonan@SeraphLegal.com
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A       Total's Truth in Lending Disclosure
B       Ms. Roper's Experian Consumer Disclosure, August 11, 2021, Total Tradeline - Excerpt
C       Ms. Roper's Experian Consumer Disclosure, August 11, 2021, Jefferson Tradeline -
Excerpt

# EXHIBIT A
## Total's Truth in Lending Disclosure

**Terms and Conditions-Website**

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **34.99%** |
| APR for Cash Advances | 34.99% |
| How to Avoid Paying Interest on Purchases | Your due date will be a minimum of 21 days after the close of each billing cycle. We will not charge interest on new purchases if you pay your entire balance by the due date each month. We will begin charging interest on cash advances on the post date. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $1.00. |
| Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| Set-Up and Maintenance Fees | Notice: The Annual Fee will be assessed before you begin using your card and will reduce the amount of credit you initially have available. Based on your initial credit limit of $300.00, your initial available credit will only be $225.00. |
| Program Fee | $95.00 (one-time fee). |
| Annual Fee | $75.00 for first year. After that, $48.00 annually. |
| Monthly Servicing Fee | None for first year (introductory). After that, $99.00 annually ($8.25 per month). |
| **Transaction Fees** | |
| Cash Advance Fee | None for first year (introductory). After that, either $10.00 or 3% of the amount of each cash advance, whichever is greater. |
| **Penalty Fees** | |
| Late Payment Fee | Up to $40.00 |
| Returned Payment Fee | Up to $40.00 |

**How We Will Calculate Your Balance:** We use a method called "Average Daily Balance (including new purchases)."

**Right to Reject:** You may still reject this plan, provided you have not used the Credit Account or paid a fee after receiving a billing statement. If you do reject the plan, you are not responsible for any fees or charges, including any Program Fee(s) paid prior to receipt of your Account Opening Disclosures. Any such Program Fee(s) previously paid will be refunded upon rejection of the plan.

# EXHIBIT B
## Ms. Roper's Experian Consumer Disclosure, August 11, 2021
## Total's Tradeline - Excerpt



**Experian** · KEDESSA ROPER | Report number [ ] | August 11 2021 | Print | Close window

### Print your report

Below is all the information currently in your credit report. The payment history guide and common questions will help explain your credit information. Print this page or write down your report number for future access.

**Address**
Experian
P.O. Box 9701 Allen, TX 75013

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| BK OF MISSOURI/TOTAL CARD | | Not reported | 05/2017 | Closed. $533 written off. |

5109 S BROADBAND LN
SIOUX FALLS, SD 57108
800 800 2143
**Address identification number**
0077207380

**Sold to**
JEFFERSON CAPITAL SYSTEMS
LLC

**Type**
Credit card
**Terms**
NA

**Credit limit or original amount**
$300
**High balance**
$533
**Monthly payment**
$0
**Recent payment amount**
Not reported

**Date of status**
08/2019
**First reported**
05/2017
**Responsibility**
Individual

**Comment**
Purchased by another lender.

**Account history**

2019  Jul  Jun  May  Apr  Mar  Feb  Jan  2018 Dec  Nov  Oct  Sep  Aug  Jul  Jun  May  Apr  Mar  Feb  Jan  2017 Dec  Nov  Oct  Sep  Aug  Jul

Jun

Charge Offas of Aug 2018
120 days past due as of Aug 2018
90 days past due as of Jul 2018
60 days past due as of Jun 2018
30 days past due as of May 2018, Feb 2018

# EXHIBIT C
## Ms. Roper's Experian Consumer Disclosure, August 11, 2021
## Jefferson's Tradeline - Excerpt

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| JEFFERSON CAPITAL SYSTEMS | ▮▮▮▮ | $533 as of 07/23/2021 | 07/2019 | Collection account. $533 past due as of |

Jul 2021.
16 MCLELAND RD
SAINT CLOUD, MN 56303
888 219 0725
**Address identification number**
0077207380
**Original creditor**
FIRST ACCESS CARD

**Type**
Debt Buyer
**Terms**
1 Months
**On record until**
Jan 2025

**Credit limit or original amount**
$533
**High balance**
$0
**Monthly payment**
$0
**Recent payment amount**
$0

**Date of status**
07/2019
**First reported**
11/2019
**Responsibility**
Individual

**Account history**

2021 Jul Jun May Apr Mar Feb  2020 Jan Dec Nov Oct Sep Aug Jul Jun May Apr Mar Feb  2019 Jan Dec Nov